IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-HC-02034-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| RANDLE PORTER COOKE, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court for a determination of whether respondent Randle Porter Cooke ("respondent") should be committed as a sexually dangerous person pursuant to 18 U.S.C. § 4248. Pursuant to 28 U.S.C. § 636(b)(1)(B), an evidentiary hearing was held before United States Magistrate Judge James E. Gates, who entered a memorandum and recommendation ("M&R") (DE # 125) wherein he recommends that the court commit respondent as a sexually dangerous person. Respondent filed objections to the M&R (DE # 128), petitioner filed a response to the objections (DE # 131), and respondent filed a reply (DE # 132). In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court finds that respondent is a sexually dangerous person and orders him committed, pursuant to § 4248, to the custody of the Attorney General.

## BACKGROUND

The procedure for commitment under § 4248 was enacted as part of the Adam Walsh Child Safety and Protection Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006) ("Adam Walsh Act"). The statute authorizes the government to certify for commitment individuals within the custody of the Bureau of Prisons ("BOP"). See 18 U.S.C. § 4248(a). Such certification automatically stays the

person's release from custody, despite the expiration of the incarcerative portion of the person's criminal sentence, pending completion of the § 4248 proceedings. See id.

The government initiated this action on March 9, 2009, by filing a certification that respondent is a sexually dangerous person. At the time, respondent was serving a term of eighty-seven months imprisonment in the BOP following his conviction in the United States District Court for the Western District of Tennessee on one count of possession of child pornography and two counts of receipt of child pornography. His projected date for release from criminal confinement was March 16, 2009, but the filing of the certification stayed his release.

## DISCUSSION

A.    Standard of Review

The court designated the magistrate judge to conduct an evidentiary hearing and to submit proposed findings of fact and recommendations for the disposition of the commitment petition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error" and need not give any explanation for adopting the M&R. See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

To obtain a commitment order pursuant to § 4248, the government must prove by clear and convincing evidence that the person (1) "has engaged or attempted to engage in sexually violent

2

conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5); (2) currently "suffers from a serious mental illness, abnormality, or disorder," id. § 4247(a)(6); and (3) as a result of the illness, abnormality or disorder, "would have serious difficulty in refraining from sexually violent conduct or child molestation if released," id. See United States v. Hall, 664 F.3d 456, 461 (4th Cir. 2012). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." Id. at 461 (quoting Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001) and citing Addington v. Texas, 441 U.S. 418, 423–24 (1979)).

B.    Adoption of the Magistrate Judge's Unchallenged Findings

The parties stipulated that the respondent "has engaged or attempted to engage in sexually violent conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5), and respondent does not dispute his criminal history, which forms the basis of the magistrate judge's first twelve findings of fact. Respondent also did not object to the findings that he has not participated in any sex offender treatment program in the community or in the Bureau of Prisons ("BOP").[1] To the extent respondent objects to the magistrate judge's depth of treatment, which respondent characterizes as "a graphic discussion of past offenses" in light of the parties' stipulation regarding respondent's prior acts, the objection is overruled where past conduct "provides a critical part of the answer" as to the serious-difficulty prong. See United States v. Wooden, 693 F.3d 440, 458 (4th Cir. 2012). Accordingly, the

_____

[1] Respondent does object to the significance that the magistrate judge attributes to these finding, which will be addressed subsequently.

3

court adopts the unobjected to factual findings of the magistrate judge, which are summarized as follows.

Respondent was fifty years old at the time of the hearing. In March 1980, at age seventeen, respondent was involved in a motorcycle accident that left him paralyzed below the waist and confined to a wheelchair. In March 1981, respondent pled guilty in Tennessee state court to attempt to commit a felony.[2] Respondent was originally charged with aggravated sexual battery, based on conduct that occurred in August 1980, when defendant had unlawful sexual contact with a child under the age of thirteen. Respondent was sentenced to two years imprisonment, suspended, and two years probation. Respondent has previously stated that, although he did not touch the victim sexually, he intended to do so and stopped only after the child appeared nervous. However, respondent later, and at the May 22, 2012 evidentiary hearing, admitted sexually touching the victim.

On February 8, 1991, respondent pled guilty in Texas state court to sexual assault of a child and indecency with a child.[3] With respect to the former offense, respondent touched the genitals of and performed oral sex on a fourteen-year-old male. The victim reported that, at the time of the offense, respondent carried a large knife with him and kept locks of hair from children in his apartment, and these items were located during law enforcement's search thereof. With respect to the latter offense, respondent touched the genitals of a male juvenile under the age of seventeen. Respondent was sentenced to ten years imprisonment on each offense, to be served concurrently.

---

[2] The M&R states that "[o]n March 2, 1980, Respondent pled guilty to attempt to commit a felony in Tennessee state court." M&R Findings of Fact § I ¶ 2. The record reflects that the offense conduct occurred in August 1980, and that respondent pled guilty and was sentenced in March 1981. See Gov't Ex. 8, 15 at 12.

[3] The M&R states that "[o]n February 8, 1990, Respondent pled guilty to sexual assault of a child and indecency with a child in Texas state court." M&R Findings of Fact § I ¶ 4. The record reflects that the offense conduct occurred in August and September 1990, and that respondent pled guilty and was sentenced in February 1991. See Gov't Ex. 15 at 13-14.

4

Respondent was released from prison on November 6, 2000, and upon his release, moved to Tennessee to live with his mother.

In May 2001, respondent met a twelve-year-old boy and his mother at a bookstore in Covington, Tennessee. Respondent told the mother that he worked with Big Brothers of America and had mentored children who were her son's age. Shortly thereafter, with the mother's consent, respondent and the boy began communicating through e-mail. The victim indicated that respondent talked with him about being a child of divorced parents and seemed to understand some of the difficulties he was experiencing at home. The victim also stated that respondent was impressed by the friendship respondent provided to his mother.

In July 2001, respondent picked up the victim to go on an afternoon outing. After driving to several locations, respondent told the victim that he was going to hypnotize him so that he could relax, instructed the victim to lean back and close his eyes, and then placed his hand on the victim's penis. Respondent next took the victim to a cemetery where he provided and smoked marijuana with the victim, then offered to perform oral sex on the victim. The victim declined, and respondent took the victim home.

After this incident, respondent continued attempts to contact the victim by telephone and e-mail until October 2011. In these communications, respondent posed as a 15-year-old boy named "Josh" in order to prevent the boy's father from learning his identity. The victim's mother intercepted respondent's phone calls and respondent's emails were deleted. Having been unsuccessful in his attempts to contact the victim, on July 12, 2001, respondent again posing as "Josh," sent a letter to the victim. Also in July 2001, respondent posed online as "Josh" and attempted to persuade a fourteen-year-old female schoolmate of the victim to arrange a meeting

5

between the three of them. When the female asked the victim about "Josh," the victim informed her that "Josh" was in reality the respondent. The female confronted respondent online with this information, and they had no further contact.

When law enforcement initially spoke with respondent, he declined knowing the victim or the female. Respondent eventually admitted sending the letter and taking the victim on the outing, but denied touching him sexually. Respondent explained that he had a sexual preference for young males, but that his sexual urges were under control, although he acknowledged offering to perform oral sex on the victim. Respondent agreed to allow law enforcement to search his computer hard drive, where investigators found approximately 115 pornographic images, 109 of which depicted teenage males between the ages of eleven and twenty engaged in sexually explicit conduct. The pornography also included a young boy, approximately nine years old, provocatively posed in shorts and with his underwear exposed.

On June 24, 2002, respondent pled guilty, in the United States District Court for the Western District of Tennessee, to one count of possession of child pornography and two counts of receipt of child pornography. On October 4, 2002, respondent was sentenced to eighty-seven months imprisonment and three years supervised release and was serving this sentence when he was certified as a sexually dangerous person.

C.     Respondent's Specific Objections to the M&R

    1.     Magistrate Judge's Use of Petitioner's Findings of Fact

    Respondent first objects to the magistrate judge's use of petitioner's proposed findings of fact. The magistrate judge explained that his findings of fact were those proposed by petitioner subject to several exceptions, which included additional findings made by the magistrate judge to

6

address differences between the petitioner's and respondent's proposed findings. The court finds no error in the magistrate judge's use of petitioner's proposed findings. Both parties agreed to make supplemental proposed findings of fact and conclusions of law after the hearing transcript was filed, presumably to aid the magistrate judge. Further, the court finds no error in the magistrate judge's supplementation of petitioner's proposed facts in order to address respondent's contradictory proposed findings. The magistrate judge provided a thorough recitation of the facts, supported by citation to the record, and the court overrules respondent's objection thereto.

2.    Conduct In BOP Custody

Respondent objects to the relevance of findings of fact regarding two incidents that occurred while he was in BOP custody: First, that in December 2002, respondent requested protective custody based on a threatening letter, which he later admitted writing himself; and second, that in 2004, respondent became sexually interested in another inmate, who was characterized as young and vulnerable with a fragile mental state.

With respect to the December 2002 incident in which respondent sought to be placed in protective custody, the court disagrees with respondent that it is irrelevant because it has no sexual component. Conduct while incarcerated may be relevant to sexual dangerousness and may aid in the determination of important factors such as a respondent's impulsiveness. See Wooden, 693 F.3d at 458. However, the court notes that respondent has had relatively few sanctions while in BOP custody and finds this particular instance of little significance, where respondent credibly testified that he was motivated by fear for his safety as an inmate having been convicted of possessing child pornography.

7

With respect to the 2004 incident, the court disagrees with respondent that it is insignificant because no sanction was issued and the inmate was an adult. Dr. Zinik testified that respondent's predatory behavior toward the vulnerable inmate bore similarity to his pursuit of the twelve-year-old victim in 2001, who was also troubled and reported that respondent seemed to understand him and talked to him about his problems. The staff psychologist at FMC Rochester, where the incident occurred, noted that respondent attempted to manipulate a psychology intern into arranging private time for respondent and this inmate and requested that the intern not inform the staff psychologist of the request. Notwithstanding that this inmate was a not minor, the fact that respondent pursued, in a manipulative and predatory manner, a relationship with a younger, mentally unstable inmate, and stated in connection therewith that he liked "young, troubled boys," is significant to the serious-impairment and serious-difficulty prongs, which will be further discussed below. Thus, the objection is overruled.

3.     Amenability to Sex Offender Treatment

Respondent objects that the magistrate judge discounted respondent's testimony that he is eager to participate in sex offender treatment. As the magistrate judge notes, respondent made clear at the hearing that he no longer desires to have inappropriate sexual relationships with young males as a result of self-reflection and his own work to remove past inappropriate thoughts. Respondent views sex offender treatment as a helpful reinforcement tool, and previously inquired about participating in sex offender treatment in the BOP, but was not eligible at the time. He has since refused sex offender treatment provided in the BOP because he does not trust the treatment providers.

8

As discussed in detail below, the court agrees with the magistrate judge that respondent suffers from hebephilia, a serious disorder for which he requires sex offender treatment to mitigate his sexual dangerousness. Even if the court were to accept respondent's statement that he has refrained from treatment because he does not trust the BOP treatment providers, the fact that he considers sex offender treatment merely as helpful reinforcement belies his contention that he would fully engage in significant treatment once released. Thus, the objection is overruled.

4.      Respondent's Relapse Prevention and Release Plan

Respondent objects to the magistrate judge's characterization of his relapse prevention and release plan as "inchoate." Respondent plans to live in an assisted living facility, preferably where his mother currently resides, to have surgery, to participate in sex offender treatment, to concentrate on his health, and to refrain from engaging in sexual offending. Respondent's proffered plan fails to fully address the relapse prevention component, i.e. how he will stop himself from reoffending if released into the community. The magistrate judge, in finding respondent's relapse and release plan inadequate, notes Dr. Zinik's testimony as to the importance of identifying triggers of sexual offending and effective prevention measures to serve as a resource for both respondent and his support group. Respondent testified that he believes himself to be now free of the urges which caused him to previously offend. It is troubling that respondent does not appear to comprehend the risk of reoffense he faces in the community upon release, as opposed to in BOP custody where he has no access to pubescent males, and that he has not formalized a plan to deal with his hebephilia once released. Accordingly, it was not error for the magistrate judge to consider the inadequacy of respondent's relapse prevention and release plan.

5.      Respondent's Correspondence with a Convicted Sex Offender

9

Respondent objects to the relevancy of the magistrate judge's finding that respondent corresponded with Patrick Szymanski, a convicted sex offender currently incarcerated in New York, with whom respondent was housed for a time at FCI Butner. The magistrate judge found that the correspondence was "manifestly relevant" to the sexual dangerousness inquiry and that respondent could derive support and justification for his offense conduct from the relationship. Respondent contends that it is not illegal for him to correspond with Szymanski and that the magistrate judge's reasoning is unsupported speculation.

Dr. Zinik, in his November 19, 2010 report, recognized "Significant Social Influences" as a dynamic risk factor and that "[c]riminal peer association is one of the most well established predictors of general recidivism." Gov't Ex. 2 at 29. It is also noteworthy that, were respondent to be released, the standard conditions imposed by the Western District of Tennessee include a prohibition against associating with any person convicted of a felony. The magistrate judge's finding regarding respondent's correspondence with Szymanski is relevant and well-supported, and the objection is overruled.

6. Weight given to expert testimony

Respondent objects that the magistrate judge was dismissive of Dr. Joseph Plaud's and Dr. Moira Artigues's testimony. The magistrate judge fully explained his reasoning for discounting the testimony of both Drs. Plaud and Artigues. Moreover, the court has conducted a de novo review of the reports and testimony provided by each expert and finds persuasive the opinions of Dr. Gary Zinik and Dr. Lela Demby as to respondent's sexual dangerousness and of Dr. Roscoe Ramsey as to respondent's physical condition, as more fully discussed below. Thus, the respondent's objection as to the weight afforded the various expert opinions is overruled.

10

7. Diagnosis of Paraphilia NOS, Hebephilia

Respondent objects to the magistrate judge's conclusion that respondent suffers from hebephilia, a paraphilic disorder characterized by an impulse to engage in sexual acts with pubescents. Dr. Zinik and Dr. Demby both diagnosed respondent with paraphilia NOS, which Dr. Zinik specified as hebephilia. Dr. Plaud testified that respondent suffers from no sexually based disorder. To the extent respondent's objection is based on the contention that hebephilia is not a valid diagnosis and, thus, cannot satisfy the serious-impairment prong, it is overruled pursuant to the Fourth Circuit's determination in United States v. Caporale, 701 F.3d 128, 136-37 & n.4 (4th Cir. 2012), that hebephilia may be a qualifying illness, abnormality, or disorder where it constitutes a serious functional impairment. Furthermore, after a careful review of the entire record, the court adopts the magistrate judge's conclusion that respondent does presently suffer from hebephilia and that it is a serious mental disorder.

Respondent contends that the magistrate judge erred by focusing on respondent's past conduct entirely in concluding that he presently suffers from hebephilia. The magistrate judge noted Dr. Zinik's testimony that respondent's attraction to pubescent boys was an enduring sexual interest and a lifelong condition. Respondent admitted to Dr. Zinik that he was having sexual thoughts about boys until a few years ago, but claimed that, after his arrest in 2001, he stopped having such thoughts. The magistrate judge noted Dr. Zinik's testimony regarding respondent's three cycles of sexual offending involving pubescent boys, which spanned twenty years. Finally, respondent has received no sex offender treatment, and Dr. Zinik testified that he has never seen a sex offender with problems as serious as respondent's effectively addressed through such self-help measures as respondent claims he has undertaken.

11

Dr. Plaud conceded that respondent is attracted to pubescent males, but does not consider such to be a deviant sexual interest that would merit a paraphilia diagnosis. Dr. Plaud, in both his report and hearing testimony, attributes respondent's sexual offense history to maturational issues and major physiological/medical challenges. Dr. Plaud's opinion would be more persuasive if respondent's first sexual offense in 1980, when he was 18 and recently paralyzed, was his only offense. However, as an adult, respondent reoffended ten years later at age twenty-eight, and again at age thirty-nine, which evidences the strength and enduing nature of respondent's hebephilia. Therefore, the court rejects the notion that respondent's immaturity and medical conditions account for his sexual offending.

The persistent nature of hebephilia, coupled with respondent's lack of sex offender treatment, undermines his testimony that he no longer experiences fantasies or urges to engage in sexual conduct with pubescent males. Furthermore, respondent has admittedly suffered significant impairment due to his hebephilia, including long periods of incarceration, feelings of shame and humiliation, and distressed familial relationships. Thus, respondent's objection to the magistrate judge's finding that respondent suffers from hebephilia and that it is a serious mental disorder is overruled.

D.    Analysis of Respondent's Sexual Dangerousness

Upon careful review of the entire record, and for the reasons that follow, the court concludes that respondent is a sexually dangerous person within the meaning of 18 U.S.C. § 4248.

1.    Previously engaging or attempting to engage in sexually violent conduct or child molestation

12

Respondent has admitted that he engaged in the acts of child molestation underlying his criminal convictions and has stipulated that the first prong is satisfied. Thus, the first element for commitment has been proven by clear and convincing evidence.

2.      Serious mental illness, abnormality, or disorder

As to the second element for commitment, the court finds, by clear and convincing evidence, that respondent suffers from a number of serious mental illnesses, abnormalities, or disorders, namely, hebephilia, personality disorder NOS, and narcotic and cannabis dependence in a controlled environment. Respondent specifically objected to the magistrate judge's finding that he suffers from hebephilia, but did not specifically challenge the findings that he suffers from a personality disorder and narcotic and cannabis dependence in a controlled environment or that each is a serious disorder. Respondent did, however, generally contend that the second element is not met.

First, as explained above, the court finds that respondent presently suffers from hebephilia and that it is a serious mental disorder. Respondent has exhibited a long-standing sexual interest in pubescent males, which has on four prior occasions resulted in respondent molesting a child. Respondent's lack of sex offender treatment, when considered in light of the persistent nature of hebephilia, casts significant doubt on respondent's self-report that he no longer experiences fantasies or urges to engage in sexual conduct with pubescent males. The serious nature of hebephilia and its functional impairment of this respondent is well-documented in the record. Accordingly, there is clear and convincing evidence that respondent suffers from the serious disorder of hebephilia.

Next, the court finds that respondent presently suffers from personality disorder NOS and that it is a serious mental disorder. Respondent was a self-described problem child who, as a teenager, frequently acted out by smoking marijuana, drinking alcohol, driving recklessly, and running away

13

from home. In diagnosing respondent with personality disorder NOS, antisocial and narcissistic features, Dr. Zinik noted respondent's continued criminal conduct despite prior sanctions, use of predatory grooming methods, sense of entitlement, sense of self-importance, and manipulative behavior. Dr. Demby, in diagnosing respondent with personality disorder NOS with borderline traits, noted that respondent was diagnosed with borderline personality disorder in 1980, and that he has been described in BOP mental health records as manipulative and predatory. Dr. Demby further noted that during the precertification interview respondent exhibited the previously noted characteristics by trying to control the discussion, demanding a further interview, and casting himself as blameless. Dr. Plaud opined that respondent does not presently meet the criteria for a personality disorder, but provided little support for this conclusion in his report or testimony. The negative functional impact of respondent's personality disorder is evidenced by his distressed familial relationships, lack of interpersonal relationships throughout his life, and a pattern of manipulation of others and disregard for their rights. Accordingly, there is clear and convincing evidence that respondent suffers from a serious personality disorder.

Finally, the court concludes that respondent suffers from narcotic and cannabis dependence in a controlled environment. Respondent has a history marijuana use beginning in early adolescence. In support of his diagnosis of cannabis dependence, Dr. Zinik noted respondent's conviction for selling marijuana in 1984, the 2001 incident where respondent was found smoking marijuana in a hospital room, the 2001 incident where respondent provided and smoked marijuana with his twelve-year-old victim, and respondent's use of marijuana for medicinal purposes. Dr. Demby testified to respondent's history of narcotic use due to his medical condition and that it was noted in his BOP records that he had engaged in drug-seeking behavior while at FMC Rochester and had a history of

14

narcotic dependence. Dr. Plaud noted in his report that respondent used marijuana "recreationally" between the ages of thirteen and twenty, but also reported that respondent, at age sixteen, received treatment for excessive use of alcohol and marijuana. Dr. Plaud did not diagnose respondent with narcotic or cannabis dependence, based on the difficulty in distinguishing between his use of narcotics for medical need and his use due to substance abuse. Dr. Artigues testified that respondent has a history of marijuana abuse and is dependent on, but not addicted to, narcotics due to his chronic pain. The court fails to appreciate any practical difference in the distinctions made by Drs. Plaud and Artigues. Thus, the court finds that there is clear and convincing evidence that respondent suffers from the serious disorders of narcotic and cannabis dependence in a controlled environment.

3. Serious difficulty refraining from sexually violent conduct or child molestation if released

As to the third element, the court finds by clear and convincing evidence that as a result of respondent's hebephilia, either acting alone or in concert with his personality disorder and substance dependence, he will have serious difficulty in refraining from sexually violent conduct or child molestation if released. The Fourth Circuit has described the serious-difficulty inquiry as follows:

> Determining whether an inmate will have serious difficulty refraining from re-offending requires the court to "evaluate[ ] the individual's present mental condition and the likely prospective effect of that mental condition on his volitional control." Francis, 686 F.3d at 275. This forward-looking inquiry, which attempts to predict the inmate's "ability to refrain from acting in accord with his deviant sexual interests," id., requires consideration of the grip strength of the mental illness on the inmate—the extent to which the inmate is controlled by the illness.

Wooden, 693 F.3d at 460 (quoting United States v. Francis, 686 F.3d 265, 275 (4th Cir. 2012)).

In determining the grip strength of respondent's mental conditions, the court has considered respondent's four prior acts of child molestation that were perpetuated by his inability to resist his

15

hebephilic urges. Respondent essentially argues that he is a self-changed man, having dedicated the past ten plus years in federal prison to ridding himself of his attraction to young pubescent males. Respondent cites his lack of infractions of a sexual nature or for possession of child pornography while incarcerated as evidence that he will not have difficulty refraining from child molestation if released. The court has considered and credits respondent for largely conforming his behavior while in custody. However, the court cannot view in isolation respondent's time in the BOP to determine whether he will have serious difficulty refraining from child molestation in the community.

Respondent was in a strikingly similar situation in November 2000, when he was released from Texas prison. Respondent testified at the hearing that while incarcerated from February 1991 until November 2000, serving a ten-year sentence for sexual assault of a child and indecency with a child, he did not think much about his sexual urges and desires. Yet, just six months after respondent's release, he engaged in an elaborate scheme to groom and molest a twelve-year-old boy. Furthermore, even after the victim reported the conduct to his mother, respondent persisted in his attempts to contact the victim by phone, email, and even through a minor classmate of the victim. Respondent only ended his pursuit of the victim after being interviewed by investigators. The evidence is clear and convincing that respondent did not then and, most importantly, does not now understand or acknowledge the "grip strength" of his hebephilic urges. The court has no confidence that, without sex-offender treatment prior to his release into the community, the result would be any different now than when respondent was released in 2000.

Both respondent and Dr. Plaud attribute respondent's sexual offending to "bad choices" as opposed to hebephilia. Respondent continues to make bad choices as evidenced by his ongoing correspondence with a convicted sex offender. That respondent fails to see the risk inherent in

16

maintaining a relationship with a convicted sex offender is deeply troubling to the court. Respondent has also attempted to minimize his culpability in admitted conduct. For example, respondent characterized the molestation of his 1980 victim as "abhorrent," but then added, "I believe the record indicates that in reaching across to retrieve something out of the glove box that I think the record shows that's what was done. Did I sexually assault him? I touched him inappropriately, yes, sir, I did." May 22, 2012 Hr'g Tr. at 33:3, 10-13.

The hearing testimony is replete with respondent's failure to fully answer questions regarding his past conduct, instead responding that he does not dispute the record. When Dr. Zinik confronted respondent in their July 2011 interview with the suggestion that respondent may not be taking responsibility for his behavior in 2001, respondent replied that he could not remember what was going on at that time due to his use of pain medication and marijuana. Dr. Demby noted in her report that respondent had denied knowing his victim's ages and claimed they were consenting, presenting himself as the victim. There is clear and convincing evidence in the record that respondent has not taken full responsibility for his conduct and fails to appreciate the seriousness of his hebephilia and the extent to which it controls his offending.

Respondent was thirty-nine at the time of his last offense and contends that his medical condition has deteriorated such that it should be considered a protective factor, reducing his risk of reoffense. Respondent is paralyzed below the waist and confined to a wheelchair, and has been since the age of seventeen. Respondent also has a neurogenic bladder, stemming from his spinal cord injury, has been using a urethral catheter since 1989, and has recurring urinary tract infections. Respondent suffers from muscle spasms, for which he takes medication to lessen the severity, and has chronic mild kidney disease that results in recurring kidney stones, for which he has had

17

numerous procedures. Respondent has femoral necrosis that causes him significant pain. Respondent was diagnosed with carpel tunnel syndrome in both wrists, which is treated with braces and physical therapy. He has difficulty writing more than one half a page at a time. Respondent suffers from migraine headaches, which are treated with injections, and chronic pain, which is treated with methadone. Finally, respondent suffers from osteoarthritis, scoliosis, and hypertension.

Two experts testified as to respondent's medical condition: Dr. Artigues, a consulting expert, and Dr. Ramsey, respondent's current treating physician at FCI Butner. Dr. Artigues opined that respondent's medical condition had deteriorated so as to greatly reduce his risk of sexual reoffense. Dr. Artigues based her opinion largely on respondent's self-reports during a June 2011 interview, having reviewed only a small subset of respondent's medical records dating back to September 2010. Dr. Artigues did not conduct a physical examination of respondent. Dr. Ramsey testified that respondent's medical conditions are not deteriorating and, in fact, have not deteriorated during the past three years he had been treating respondent. Dr. Ramsey has been respondent's treating physician since 2009 and testified the he sees respondent every three to four months for approximately one hour at each visit to address his chronic care needs. Dr. Ramsey testified that respondent is fairly independent and that, while he may benefit from assisted living, he is physically capable of living self-sufficiently with assistive devices, such as a motorized wheelchair and a van with a lift.

The court finds that respondent's medical condition has not deteriorated to the point that it would significantly reduce his risk of reoffense if released. Respondent committed each of his sexual offenses while paralyzed and confined to a wheelchair. The fact that he is unable to have an erection or ejaculate is of no import, where his pattern of offending indicates that he receives sexual

18

gratification by orally copulating his victims. The court credits the testimony of Dr. Ramsey, as respondent's treating physician, and discounts the testimony of Dr. Artigues, who relied almost exclusively on respondent's self-reports, which have not always been truthful. Furthermore, respondent's testimony indicates that he believes many of his conditions have not been properly treated while in the BOP and that he plans to have surgeries once released that would improve some of his conditions. Again, the court has no confidence that respondent's medical conditions would prohibit or even substantially lessen the likelihood of him committing another act of child molestation if released.

Respondent offers as evidence of his volitional control that with his first and last victims he "put the breaks on" his behavior when his victims became uncomfortable or asked him to stop. Respondent admitted to molesting both of these victims, by fondling or touching their genitalia. That respondent, after touching his last victim's penis, exercised control by not performing oral sex on the victim leaves the court with little comfort that respondent will have the necessary control to refrain from seeking sexual gratification from pubescent males if released into the community. The court also credits Drs. Zinik's and Demby's testimony that respondent's personality disorder has an additive effect on his inability to refrain from child molestation, allowing him to act more freely on his impulses.

Respondent also argues that his three year term of supervised release, which includes, among other things, that he participate in sex offender treatment, have no unsupervised access to minor children, and not loiter or reside in proximity to locations frequented by children, will adequately address any risk he may pose. The court has considered respondent's supervised release, as well as

19

his age and the actuarial assessments conducted by the various experts, but finds that they do not sufficiently mitigate the other indicators of risk discussed above.

In sum, the court finds by clear and convincing evidence that as a result of respondent's hebephilia–either alone or in concert with his personality disorder and substance dependence–which constitutes a serious mental illness, abnormality, or disorder, respondent will have serious difficulty refraining from child molestation if released. Although the court is ordering respondent committed, this determination does not necessarily mean that respondent will be confined for the rest of his life. The statute provides for periodic review of the propriety of commitment. An annual report on respondent's condition will be submitted to the court, pursuant to 18 U.S.C. § 4247(e)(1)(B). Furthermore, the director of the facility where respondent will be housed may prompt the court to release respondent by certifying to the court "that he is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment[.]" 18 U.S.C. § 4248(e). Finally, after the expiration of 180 days following each determination by the court regarding respondent's commitment, respondent may move for a hearing to determine whether he should be discharged. 18 U.S.C. § 4247(h). Should respondent fully engage in significant sex offender treatment while committed, the court will consider his discharge in proper course.

## CONCLUSION

For all of the foregoing reasons, the court hereby finds by clear and convincing evidence that respondent is a sexually dangerous person within the meaning of 18 U.S.C. § 4247(a)(5) and (6). IT IS THEREFORE ORDERED that Respondent is hereby COMMITTED to the custody of the United States Attorney General as a sexually dangerous person pursuant to 18 U.S.C. § 4248(d).

SO ORDERED, this the 18TH day of March, 2013.

LOUISE W. FLANAGAN
United States District Court Judge

21